**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Latricia Brown, as mother and Independent | ) | |
| Administrator of the Estate of | ) | 19 CV |
| SHARELL BROWN, deceased | ) | |
| Plaintiff, | ) | Judge |
| vs. | ) | |
| | ) | Jury Demanded |
| City of Chicago, a municipal corporation, | ) | |
| Joseph Lisciandrello Star No. 19362, | ) | |
| Robert Rhodes Star No. 12625, and other | ) | |
| presently unknown Chicago police officers, | ) | |
| Defendants. | ) | |

## **COMPLAINT**

NOW COMES the Plaintiff, Latricia Brown, the duly appointed

Independent Administrator of the Estate of her son Sharell Brown, deceased,

by her attorneys, Richard R. Mottweiler, Mark F. Smolens, and Nicole L.

Barkowski, Mottweiler & Smolens, LLP, and as her complaint against the

defendants, state the following:

<u>Introduction/Jurisdiction and Venue</u>

1. This action seeks damages under federal law, Title 42 U.S.C. Section

1983, for defendants' actions which violated Plaintiff's rights under the

Fourth and Fourteenth Amendments to the United States Constitution. This

action also seeks damages for wrongful death and survival claims arising

under Illinois law.

2. The jurisdiction of this Court is invoked pursuant to Title 28 U.S.C.

Sections 1331 and 1343, as well as this Court's supplemental jurisdiction

under Title 28 U.S.C. Section 1367.  Venue in this District is predicated upon Title 28 U.S.C. Section 1391(b), as all events giving rise to the claims asserted herein took place within this Northern District of Illinois.

3.     On May 11, 2019 at the age of 26 years old, the plaintiff's son and decedent, Sharell Brown, was shot at and ultimately killed, without legal or lawful justification, by defendant Chicago Police Officers Robert Rhodes and Joseph Lisciandrello, who were not only acting "under color" of law as that phrase has been interpreted within the meaning of Title 42 U.S.C. Section 1983, but within the course and scope of their employment as police officers for defendant City of Chicago, a municipal corporation.

Parties

4.     At all times relevant hereto, the plaintiff's decedent, Sharell Brown, was 26 years old, and an Illinois resident who lived in the City of Chicago, Illinois.

5.     Plaintiff Latricia Brown is the duly named Independent Administrator of the Estate of her son, the decedent Sharell Brown, and brings this action on behalf of decedent and his surviving heirs and next of kin, his parents, Laqwan Moore, Sr. and Latricia Brown, and his siblings, Dontrell Brown, Laqwan Moore, Jr., Tajuan Brown, Deonta Ashley, and Takia Brown.

6.     The Order Appointing Latricia Brown as Representative of the Estate of

2

Sharell Brown, deceased, was entered by the Honorable Mary Ellen Coghlan sitting in the Probate Division of the Circuit Court of Cook County on July 25, 2019, and Letters of Administration were granted to Latricia Brown on that same date establishing her as the Independent Administrator of the Estate of Sharell Brown.

7.    Defendant City of Chicago (hereinafter "City") is an Illinois municipal corporation, incorporated under the laws of the State of Illinois, and was at all times material hereto, employer and principal of defendants Robert Rhodes and Joseph Lisciandrello, as well as multiple other Chicago police officer defendants whose names are presently unknown to plaintiff and her counsel.

8.    Defendant Robert Rhodes (hereinafter "Rhodes"), Star #12625, was at all times pertinent hereto a police officer for the Chicago Police Department, acting "under color" of law and within the course and scope of his employment. Rhodes is sued individually.

9.    Defendant Joseph Lisciandrello (hereinafter "Lisciandrello"), Star #19362, was at all times pertinent hereto a police officer for the Chicago Police Department, acting "under color" of law and within the course and scope of his employment. Lisciandrello is sued individually.

10.    Other individual defendants, whose identities are not presently known

to the plaintiff and her counsel, were at all times pertinent hereto police officers for the Chicago Police Department, acting "under color" of law and within the course and scope of their respective employment. Each of these presently unknown defendants is sued individually.

### Factual Allegations Common to Each Count

11.    On May 11, 2019, at some time shortly after 3:15 p.m., the plaintiff's decedent, Sharell Brown, was in the vicinity of the 10th Police District, in the general area of the 1400 Blocks of South Millard and South Lawndale Avenues in the City of Chicago, IL.

12.    At that same date and time, defendant Rhodes was on patrol with a partner, Officer (first name unknown) David, driving an unmarked police vehicle in the vicinity of the 10th Police District, in the general area of the 1400 Blocks of South Millard and South Lawndale Avenues in the City of Chicago, IL, at which time the officers came upon Sharell Brown on the street outside of their police vehicle.

13.    After activating his Department-issued body worn camera, Officer Rhodes appeared (based upon the video of that portion of the encounter which has been posted on the case portal of the Civilian Office of Police Accountability's website) to engage Sharell Brown in a brief conversation.

14.    At that the time that he initially encountered defendant Rhodes and his

partner, decedent Sharell Brown was not suspected of having committed any violent offenses, or any other offense that would have justified the use of deadly force against him.

15.    At that same date and time, decedent Sharell Brown was not suspected of having committed any criminal offense, let alone a forcible felony offense.

16.    After no more than ten seconds had elapsed from the time his police vehicle had come to a stop, defendant Rhodes exited that vehicle and began chasing the decedent Sharell Brown on foot.

17.    As defendant Rhodes began chasing decedent Sharell Brown westbound, Rhodes almost immediately yelled "I'm gonna [expletive] shoot you," followed by "I'm gonna [expletive] kill you" multiple times.

18.    At that same date and time, within no more than eight seconds after exiting his vehicle, defendant Rhodes began firing his weapon (multiple times) at decedent Sharell Brown, as Sharell Brown attempted to run away from the police officer who had just threatened to kill him.

19.    After exiting his police vehicle, defendant Rhodes fired his weapon a total of eleven (11) times at Sharell Brown.

20.    As of filing this Complaint, it is unknown if any of the bullets fired by defendant Rhodes struck Sharell Brown.

21.    On May 11, 2019, at some time shortly after 3:15 p.m., defendant Rhodes acted intentionally, willfully, with malice, and/or reckless indifference for decedent Sharell Brown's rights and life when he shot at him eleven (11) times.

22.    After firing his weapon eleven (11) times, defendant Rhodes lost sight of decedent Sharell Brown.

23.    After losing sight of decedent Sharell Brown, defendant Rhodes radioed for the assistance of backup officers to the area.

24.    Other Chicago police officers, many of whom were also wearing Department-issued body worn cameras, arrived in the area.

25.    Defendant Lisciandrello was one of the officers who responded to the call for backup.

26.    On May 11, 2019, at some time after the initial call for backup, defendant Lisciandrello encountered Sharell Brown in a rear yard/gangway between 1421 and 1423 S. Lawndale Ave. Chicago, IL.

27.    Shortly before that encounter, defendant Lisciandrello had participated in a nearby traffic stop of an individual unrelated to Sharell Brown.

28.    During that unrelated traffic stop, defendant Lisciandrello's Department-issued body worn camera was operational (and the video of that unrelated encounter has been posted on the case portal of the Civilian Office of Police Accountability's website).

29.    After it was determined that the individual involved in the unrelated traffic stop had no involvement with the plaintiff's decedent, defendant Lisciandrello left that scene.

30.    Shortly after arriving in the area of the rear yard/gangway between 1421 and 1423 South Lawndale, defendant Lisciandrello turned off his body worn camera.

31.    On May 11, 2019, at approximately 3:43 p.m., in that rear yard/gangway between 1421 and 1423 S. Lawndale Ave. Chicago, IL. defendant Lisciandrello fired his weapon nine (9) times at decedent Sharell Brown, apparently striking him multiple times.

32.    On May 11, 2019, at approximately 3:43 p.m., Defendant Joseph Lisciandrello acted intentionally, willfully, with malice, and/or reckless indifference for decedent Sharell Brown's rights and life when he shot at him

nine (9) times.

33.    After being shot in that rear yard/gangway, Sharell Brown was

subsequently transported to Mt. Sinai Hospital in Chicago, IL where he was

pronounced dead.

34.    Following the shootings, defendant Rhodes falsely claimed that Sharell

Brown either pointed or fired a weapon at the officer during the foot pursuit.

35.    Following the shootings, defendant Lisciandrello was depicted on

another officer's Department-issue body worn camera falsely claiming that

Sharell Brown had fired a weapon at the officer.

36.    According to the investigation conducted by the Civilian Office of Police

Accountability, there is no evidence that Sharell Brown fired a weapon at

either officer on May 11, 2019.

## COUNT I
## Excessive Force (Individual defendants) - § 1983

37.    Plaintiff re-alleges and incorporates paragraphs one through thirty-six,

above, as if fully restated here in as this paragraph thirty-seven.

38.    At all times relevant hereto, plaintiff's decedent Sharell Brown had the

right to be from injury and death from unreasonable, malicious, excessive

force from state actors such as defendants Rhodes and Lisciandrello, as protected by the Fourth and Fourteenth Amendments to the Constitution of the United States.

39.    As described above, defendants Rhodes and/or Lisciandrello violated the plaintiff's decedent's right to be free from unreasonable, malicious, excessive force when he/they shot at Sharell Brown causing multiple gunshot wounds which proximately caused his death.

40.    As result of defendants' concerted unjustified and excessive use of force, Sharell Brown suffered injuries, pain, as well as severe emotional distress.

41.    Assuming *arguendo* that other currently unknown defendant Chicago police officers did not fire their weapons, even if those weapons were not in fact actually discharged in the direction of Sharell Brown, those currently unknown defendant Officers were present in the area of this occurrence and had a reasonable opportunity to prevent the harm done to Sharell Brown, and should have intervened to prevent the patently unjustified and excessive use of force in shooting the plaintiff's decedent.

42.    As a result of that failure to intervene, Sharell Brown suffered pain and injury, and ultimately death.

43.    The constitutional misconduct described in this Count I was objectively unreasonable and was undertaken intentionally with willful deliberate indifference to Sharell Brown's constitutional rights.

44.    The misconduct described in this Count I was objectively unreasonable and was undertaken intentionally with willful deliberate indifference to Sharell Brown's constitutional rights.

**COUNT II**
**Excessive Force/Code of Silence (*Monell* claim)  - § 1983**

45.    Plaintiff re-alleges and incorporates paragraphs one through forty-four, above, as if fully restated herein as this paragraph forty-five.

46.    At all times relevant to this Complaint, the individually named police officer defendants, both known (Rhodes and Lisciandrello), and unknown, were acting under the direction and control of supervisory personnel in charge of the City of Chicago Police Department.

47.    Upon information and belief, supervisory personnel and decision makers in charge of the City of Chicago Police Department knowingly, and with callous disregard for the rights of plaintiff's decedent, failed to properly instruct, supervise, control, and discipline on a continuing basis employees of the Department, including but not limited to the individual police officer defendants, in their duties to refrain from unlawfully and maliciously using

excessive and unreasonable force when restraining or attempting to restrain individuals.

48.    Defendant City of Chicago and its Police Department failed to develop, maintain, and enforce proper procedures and conduct proper training of their employees, including but not limited to the individual police officer defendants, and failed to control or discipline those employees on a continuing basis, said failures having proximately caused the violation of the rights of plaintiff's decedent.

49.    Defendant City of Chicago and its Police Department had the obligation to properly instruct, supervise, control, discipline or otherwise prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence and knowingly, recklessly, or with deliberate indifference and callous disregard of the rights of plaintiff's decedent and refused and/or failed to do so.

50.    As a matter of both policy and practice, the actions and inactions of defendant City of Chicago and its Police Department have facilitated and permitted the very type of misconduct at issue here by failing to adequately investigate, discipline and/or punish prior instances of misconduct similar to that alleged in this Complaint by officers employed by the Chicago Police Department, thereby leading the individual police officer defendants, to believe that their actions would never be adequately scrutinized and, in that

way, directly encouraged future abuses such as those which affected plaintiff's decedent, Sharell Brown.

51.    As a matter of both policy and practice, defendant City of Chicago and its Police Department attempted to, and did, facilitate cover-ups of abuses fostered upon citizens by officers employed by members of the Chicago Police Department.

52.    Upon information and belief, as a matter of widespread practice so prevalent as to comprise municipal policy on the part of defendant City of Chicago, officers of the Chicago Police Department have abused other citizens in a manner similar to that alleged by plaintiff's decedent, Sharell Brown, in this Complaint.

53.    Upon information and belief, defendant City of Chicago and its Police Department, through its supervisory personnel and decision makers is aware of (and condone and facilitate by their inaction) a so-called "code of silence" among employees working for the Chicago Police Department, including but not limited to these individual police officer defendants, by which such employees fail to report misconduct committed by others, such as the misconduct at issue in this case.

54.    In at least one case, a jury sitting in the Federal District Court for the Northern District of Illinois and hearing evidence in a civil case relating to

misconduct by Chicago police officers and the claimed existence of a "code of silence" in the Chicago Police Department, expressly concluded that such a policy existed, and awarded damages to a plaintiff proximately injured thereby.

55.    Indeed, a former chief executive of the municipal defendant City of Chicago, during his recently ended final term in office, publicly admitted the existence of such a "code of silence" in the Chicago Police Department.

56.    On December 7, 2015 the United States Department of Justice (hereinafter "DOJ") Civil Rights Division and Special Litigation Section, as well as the United States Attorney's Office for the Northern District of Illinois initiated an investigation of the Chicago Police Department (hereinafter "CPD") and the then-existing Independent Police Review Authority (hereinafter "IPRA").

57.    The DOJ conducted its investigation in accordance with its authority under the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141, Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d, and the Omnibus Crime Control and Safe Streets Act of 1968, 42 U.S.C. § 3789d.

58.    On January 23, 2017, the DOJ Civil Rights Division and the United States Attorney's Office for the Northern District of Illinois released a report titled: "Investigation of the Chicago Police Department."[1]

59.    The DOJ report provides a lengthy summary of the CPD's code of silence including officers falsifying reports, to lying in court testimony, to cover-ups of use of force incidents and other misconduct.

60.    The DOJ prepared the report based on reviewing documents provided by CPD, the IPRA, and the City, including policies, procedures, training plans, department orders and memoranda, and internal and external reports, meeting with community members, community organizations, and City officials, and interviewing current and former CPD officers and IPRA investigators.

61.    The DOJ published the report in January 2017 and considered incidents which had taken place between January 2011 and April 2016.

62.    In addition to a team of attorneys, paralegals, outreach specialists, and data analysts from the Civil Rights Division of the DOJ and the U.S. Attorney's Office for the Northern District of Illinois, eleven independent subject-matter experts assisted with the investigation.

---

[1] A copy of the report can be found here
https://www.justice.gov/opa/file/925846/download

14

63.    These experts are primarily current or former law enforcement officials from police departments across the country.

64.    According to the 164-page DOJ report, Chicago police officers engage in dangerous and unnecessary foot pursuits, that result in CPD officers shooting people, including those who are unarmed, and are the result of unsafe tactics that placed officers and others in danger of being shot.

65.    The DOJ report concluded, in part, "CPD officers do not fully report their uses of force and that supervisors are not appropriately reviewing these uses of force."

66.    The DOJ investigation found many circumstances in which Chicago Police officers' accounts of force incidents were later discredited, in whole or part, by video evidence.

67.    According to the DOJ report "As a result of so few force incidents being even nominally investigated, and the low quality of the force investigations that do occur, there is no meaningful, systemic accountability for officers who use force in violation of the law or CPD policy. Nor is there any opportunity for meaningful assessment of whether policies, training, or equipment should be modified to improve force outcomes in the future for officers or civilians. The failure to review and investigate officer use of force

has helped create a culture in which officers expect to use force and not be questioned about the need for or propriety of that use. In this way, CPD's failure to adequately review officer use of force on a regular basis has combined with CPD's failure to properly train and supervise officers to perpetuate a pattern of unlawful use of force within CPD."

68.    Upon information and belief, defendant City of Chicago and its Police Department have failed to act to remedy the patterns of abuse described in the instant Complaint and the DOJ's report, despite actual knowledge of the same on the part of Departmental supervisory personnel and decision makers, thereby causing the types of injuries and damages alleged herein to the plaintiff's decedent, Sharell Brown.

69.    The foregoing acts, omissions, and systematic failures are customs and policies of the City of Chicago and its Police Department and, upon information and belief, caused individuals employed by the Chicago Police Department including the individually named police officer defendants herein, to believe that complaints of excessive and unreasonable force would not be honestly or properly investigated, with the foreseeable result that such employees would therefore be likely to use constitutionally excessive and unreasonable force.

70.    As a direct and proximate cause of the aforesaid acts, omissions, policies and customs of the City of Chicago and its Police Department,

through its supervisory personnel and decision makers, plaintiff's decedent was deprived of rights as guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States.

### COUNT III
### Conspiracy (individual defendants) - § 1983

71.    Plaintiff re-alleges and incorporates paragraphs one through seventy, above, as if fully restated herein as this paragraph seventy-one.

72.    After defendant Rhodes' initial radio call for assistance in the area of the 1400 Blocks of South Millard and South Lawndale Avenues, a multitude of additional Chicago police officers, both line officers and supervisory personnel, arrived on scene.

73.    Those officers, known and unknown, reached an agreement, whether tacit or implicit, to deprive the plaintiff's decedent Sharell Brown of his constitutional rights and to cover up that deprivation, as described in the various paragraphs of this Complaint above.

74.    In this manner, the individual defendant officers and supervisors, acting in concert with other unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

75.     In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

76.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of the plaintiff's decedent and the members of his family seeking justice for the death of Sharell Brown.

## COUNT IV
## <u>Illinois Wrongful Death Claim</u>

77.     Plaintiff re-alleges and incorporates paragraphs one through forty-two, above, as if fully restated here in as this paragraph seventy-seven.

78.     Plaintiff, as Administrator of the  Estate of Sharell Brown, deceased, brings this cause of action pursuant to the provisions of 740 ILCS 180/I, *et seq.,* commonly known as the Illinois Wrongful Death Act.

79.     At all material times, defendant Officers Rhodes and Lisciandrello, and other currently unknown Chicago police officers, acting as a duly authorized agents and employees of defendant City of Chicago, owed decedent Sharell Brown, a duty to refrain from wanton and willful acts and omissions, which could cause him harm.

18

80.   At all material times, defendant Officers, by and through their acts and/or omissions and as an agent, employee, and police officer of the City of Chicago, breached their duty to decedent Sharell Brown by acting in an intentional manner, willful and wanton manner, and/or with utter indifference and conscious disregard for decedent Sharell Brown's health and safety in one or more of the following respects:

    a.    Shot Decedent;

    b.    Shot Decedent without justification;

    c.    Shot Decedent without lawful justification;

    d.    Discharged a weapon in such a manner as to shoot the Decedent;

    e.    Discharged a weapon in such a manner as to shoot the Decedent without justification;

    f.    Discharged a weapon in such a manner as to shoot the Decedent without lawful justification;

    g.    Used excessive and inappropriate deadly force;

    h.    Used excessive and inappropriate deadly force without lawful justification;

    i.    Failed to exercise the proper level of force that was warranted under the circumstances;

    j.    Used force in such a manner against Decedent Sharell Brown in a way that violated Chicago Police Department policies, rules, regulations and general orders;

    k.    Discharged a weapon in such a manner as to shoot decedent Sharell Brown in a way that violated Chicago Police Department policies, rules, regulations and general orders;

    l.    Failed to use less dangerous means of restraint on Decedent, before using and discharging their firearm, as Decedent was not engaged in conduct that would justify

deadly force;

m.  Failed to warn the Decedent of the impending use of force;

n.  Failed to implement and adhere to a use of force continuum consistent with that used by law enforcement;

o.  Failed to provide medical care to the Decedent after causing his injuries;

p.  Was otherwise willful and wanton and/or grossly negligent.

81.  As a direct and proximate result of said willful and wanton acts and/or grossly negligent acts and/or omissions, decedent Sharell Brown died on May 11, 2019.

82.  Decedent Sharell Brown is survived by his heirs and next of kin, his parents, Laqwan Moore, Sr. and Latricia Brown, and his siblings Dontrell Brown, Laqwan Moore, Jr., Tajuan Brown, Deonta Ashley, and Takia Brown.

83.  By reason of the death of decedent Sharell Brown, decedent's next of kin have lost and will continue to lose, pecuniary support, consortium, society, companionship, as well as grief and sorrow from the loss of the love, affection, and protection of their relative, Sharell Brown, and his Estate has incurred funeral and burial expenses as a proximate cause of his wrongful death.

84.  Defendant City of Chicago, a municipal corporation is responsible on a *respondeat superior* basis pursuant to 735 ILCS 10/9-102 for any tort

judgment for compensatory damages for which employees are liable within the scope of their employment activities.

## COUNT V
## Survival Action

85.    Plaintiff re-alleges and incorporates paragraphs one through forty-two, above, as if fully restated here in as this paragraph eighty-five.

86.    Plaintiff, as Administrator of the Estate of Sharell Brown, deceased, brings this cause of action pursuant to the provisions of 755 ILCS 5/27-6 *et seq.*, commonly known as the Survival Act of Illinois.

87.    At all material times, defendant Officers Rhodes and Lisciandrello, and other currently unknown Chicago police officers, acting as duly authorized agents of Defendant City of Chicago, owed decedent Sharell Brown, a duty to refrain from wanton and willful acts and omissions, which could cause him harm.

88.    At all material times, defendant Officers, by and through their acts and/or omissions as an agent, employee, and police officer of the City of Chicago, breached their duty to decedent Sharell Brown by acting in an intentional manner, willful and wanton manner, and/or with utter indifference and conscious disregard for decedent Sharell Brown's health and safety in one or more of the following respects:

a.     Shot Decedent;

b.     Shot Decedent without justification;

c.     Shot Decedent without lawful justification;

d.     Discharged a weapon in such a manner as to shoot the Decedent;

e.     Discharged a weapon in such a manner as to shoot the Decedent without justification;

f.     Discharged a weapon in such a manner as to shoot the Decedent without lawful justification;

g.     Used excessive and inappropriate deadly force;

h.     Used excessive and inappropriate deadly force without lawful justification;

i.     Failed to exercise the proper level of force that was warranted under the circumstances;

j.     Used force in such a manner against decedent Sharell Brown in a way that violated Chicago Police Department policies;

k.     Discharged a weapon in such a manner as to shoot decedent Sharell Brown in a way that violated Chicago Police Department Policies

l.     Failed to use less dangerous means of restraint on decedent, before using and discharging their firearm, as decedent was not engaged in conduct that would justify deadly force;

    m.    Failed to warn the Decedent of the impending use of force;

    n.    Failed to implement and adhere to a use of force continuum consistent with that used by law enforcement;

    o.    Failed to provide medical care to the Decedent after causing his injuries;

    p.    Was otherwise willful and wanton and/or negligent.

89.   As a direct and proximate result of said willful and wanton acts and/or grossly negligent acts and/or omissions, decedent Sharell Brown suffered damages, including physical and emotional injuries, medical expenses, and conscious pain and suffering experienced while he was dying from his gunshot wounds.

90.   As a direct and proximate result of said willful and wanton acts and/or grossly negligent acts and/or omissions, decedent Sharell Brown died on May 11, 2019.

91.   As a direct and proximate result of one or more of the forgoing acts and/or omissions, caused decedent Sharell Brown to lose his chance of survival.

92.   As a further direct and proximate result of Defendant Officers willful and wanton acts, decedent Sharell Brown suffered injuries of a personal and pecuniary nature, including without limitation, disability, disfigurement, pain,

and suffering, emotional trauma, and loss of chance of survival, for which decedent Sharell Brown would have been entitled to receive compensation from the City of Chicago and the defendant Officers had he survived.

93.    Defendant City of Chicago, a municipal corporation, is responsible on a *respondeat superior* basis pursuant to 735 ILCS 10/9-102 for any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

WHEREFORE, Plaintiff, as Independent Administrator of the Estate of Sharell Brown, deceased, demands judgment against defendants City of Chicago, Robert Rhodes, Joseph Lisciandrello, and other currently unknown Chicago Police Officers, and each of them, jointly and severally, for compensatory damages against all defendants, costs, attorney's fees pursuant to Title 42 U.S.C. Section 1988, as well as punitive damages against the individual defendant police officers, and any such further relief deemed just and proper by this Court.

 /s/ Mark F. Smolens
Attorney for Plaintiff


**MARK F. SMOLENS  #46701**
**MOTTWEILER & SMOLENS, LLP**
**1627 West Colonial Parkway**
**Suite 301**
**Inverness, IL 60067**
**(773) 580-4982**
**ryansmolensjones@hotmail.com**